UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC TYRONE C., JR.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 2:18-CV-01944-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## ISSUES PRESENTED

Plaintiff Isaac Tyrone C., Jr. ("Plaintiff") appeals the denial of his application for disability insurance benefits ("DIB") based on the Administrative Record ("AR"). His appeal presents the following two issues:

<u>Issue One</u>: Whether Plaintiff's work as laundromat attendant constitutes substantial gainful activity ("SGA") and thus "past relevant work" as defined in 20 C.F.R. § 404.1560(b)(1).

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

Issue Two: Whether the Appeals Council gave legally sufficient reasons for rejecting the opinions of Dr. Frederick Thomas.

Joint Stipulation ("JS") at 5, 12.

## II.
## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

A. **Pre-Hearing Proceedings.**

In August 2015, Plaintiff filed a DIB application alleging disability starting on January 2, 2014, due to high blood pressure and psoriasis. AR 35, 105.

Plaintiff completed a Work History Report describing his past work as a laundromat attendant.[2] AR 127-29. Per that report, he was a laundromat worker from 2000 to 2014. AR 127. His job duties included wiping down the machines and dumping the trash. AR 129. The heaviest weight he lifted was less than 10 pounds. Id. He worked six hours a day, six days per week and spent the workday walking or standing. AR 129.

The agency reviewer found that Plaintiff had no severe medically determinable impairments ("MDIs") and was therefore not disabled. AR 39-40. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

B. **The Hearing.**

ALJ David J. Agatstein conducted the hearing on June 29, 2017. AR 20-34. Concerning his work at the laundromat, Plaintiff testified that he stopped working because the company went out of business, after which he received unemployment benefits. AR 24. He testified that he was presently unable to work due to left shoulder pain and a learning disability. AR 25.

A medical expert ("ME") Dr. Savage testified that Plaintiff's MDIs were

---

[2] Plaintiff did not identify any other prior work. In contrast, Plaintiff's cousin reported that Plaintiff "has a history of painting houses for 10 years." AR 269-70.

dermatitis, hypertension, left-side Sprengel's deformity[3] post successful surgical repair in 1962, and "intelligence disability," noting that Plaintiff's IQ was 71. AR 26. Dr. Savage testified that none of Plaintiff's MDIs met or equaled a listed impairment, then qualified his answer regarding Plaintiff's mental disability by saying, "[T]hat's not my field and I would defer certainly to psychologic expert opinion." Id. Dr. Savage opined concerning Plaintiff's residual functional capacity ("RFC") that Plaintiff could generally do "light" work activity as defined in 20 C.F.R. § 404.1567(b). AR 27.

Vocational expert ("VE") Mr. Stock testified next. AR 27. He classified Plaintiff's laundromat work as Dictionary of Occupational Titles ("DOT") code 361.685-018, which is medium work with a specific vocational preparation ("SVP") of 2. AR 28. He testified that Plaintiff had actually performed the job as light work per his Work History Report. Id. VE Stock also testified that someone with the RFC described by ME Savage could perform Plaintiff's past work as he actually performed it. Id. Finally, the VE testified that if someone were limited to simple, repetitive tasks, that person could also do Plaintiff's past work, because an SVP rating of 2 is consistent with simple, repetitive tasks. AR 29.

In response to this testimony concerning Plaintiff's past work, Plaintiff's counsel stated, "I think I was going to have his cousin[4] testify that he gets a lot – he got a lot of accommodations – from the laundromat. [] It was like a sheltered, it was like a friend of his who let him have the job." AR 30.

The ALJ then suggested that Dr. Peterson testify as a second ME with expertise in mental health. Id. When the ALJ asked Dr. Peterson if a person with

---

[3] Sprengel's deformity is a rare congenital skeletal abnormality where a person has one shoulder blade that sits higher on the back than the other. See https://en.wikipedia.org/wiki/Sprengel%27s_deformity.

[4] Plaintiff lives with his cousin, David Washington. AR 268-69.

3

a full-scale IQ score of 71 could perform simple, repetitive tasks, he responded that he would like to see the IQ subtest scores and other data before answering. AR 31. The ALJ then rephrased the question, asking "If you were told about a hypothetical individual who … worked at an SVP 2 job for many years … and was tested at that IQ, would it be any reason to think that perhaps in a normal competitive setting the individual would not be able to do that work?" Id. Dr. Peterson answered, "Under those circumstances, because we have some adaptive functioning history, I would suggest then that it wouldn't prevent someone from doing simple, repetitive tasks given the work history." Id.

C. **The ALJ's Decision.**

The ALJ issued a decision awarding benefits. AR 15-19. He found that Plaintiff suffered from severe MDIs consisting of scoliosis, dermatitis, hypertension, residuals of left shoulder deformity and repair, and mild intellectual disability. AR 17. He found that these impairments did not meet or equal any listed impairments. Id. Concerning Plaintiff's intellectual disability, he found that it caused (1) "moderate" limitations on understanding and applying information and maintaining concentration, persistence, or pace, (2) mild limitations on self-management, and (3) no limitations on social interactions. Id.

Considering these MDIs, the ALJ assessed an RFC for sedentary work limited to simple, repetitive tasks. Id. The ALJ found that Plaintiff could not perform his past work at the laundromat, because even as he actually performed it (i.e., light work), it exceeded his RFC for sedentary work. AR 18. The ALJ concluded that there was no other work Plaintiff could do in the national economy. Id.

D. **Appeals Council Proceedings.**

On August 28, 2017, the Appeals Council sent Plaintiff a letter notifying him that it had reviewed the ALJ's decision and found it unsupported by substantial evidence. AR 100. It advised, "We plan to find that you are capable of

performing your past relevant work ...." AR 101. It explained that Plaintiff's earnings from the laundromat between 2000 and 2014 were "above the presumptive limit for substantial gainful activity" and that this employment had lasted "long enough to learn the job." AR 102. The Appeals Council invited Plaintiff to submit additional evidence within 25 days. Id.

The Appeals Council issued an unfavorable decision on January 5, 2018. AR 4-7. The Appeals Council noted that in response to its August 28, 2017 letter, Plaintiff had submitted a "statement ...regarding the claimant's recent earnings as of October 18, 2017," which it considered. AR 4; see also AR 170 (stating that Plaintiff is no longer receiving $300 "as day" [sic]). The Appeals Council did not note any other new evidence that Plaintiff submitted concerning his work at the laundromat. Id.

The Appeals Council adopted the ALJ's findings at steps one, two, and three of the sequential evaluation process. AR 4. At step four, however, the Appeals Council concluded that the ALJ's "sedentary" RFC assessment lacked support by substantial evidence. AR 5. The Appeals Council discussed the evidence of Plaintiff's MDIs and why, in its view, those impairments limited him to light work, not sedentary work. Id. The Appeals Council gave "significant weight" to the opinions of ME Savage. Id. The Appeals Council also stated, "we adopt the findings and rationale pertaining to his mental impairments and mental limitations as found in the hearing decision," apparently referring to the testimony of ME Peterson. Id.

The Appeals Council next found that Plaintiff's work at the laundromat was SGA because his earnings were above the presumptive limit.[5] Based on the

---

[5] See 20 C.F.R. § 404.1574(b)(2)(ii); Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, Social Security Administration Program Operation Manual System ("POMS") § DI 10501.015(B).

5

testimony of VE Stock, the Appeals Council found that Plaintiff (as someone capable of light work but limited to simple, repetitive tasks) could perform that work as Plaintiff actually performed it. AR 6.

## III.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The Commissioner's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the [Commissioner] will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the [Commissioner] was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

Within 60 days after the date of an ALJ's decision, "the Appeals Council

may decide on its own motion to review the action that was taken." 20 C.F.R. § 404.969(a). The Appeals Council has authority to review the merits of the ALJ's determination of disability and is "not required to adopt the particular findings of the ALJ even if those findings were supported by substantial evidence." Taylor, 765 F.2d at 875. A decision is not final until the Appeals Council either denies review or assumes jurisdiction and issues its own decision. 20 C.F.R. § 404.955. Where the Appeals Council vacates the ALJ's decision and issues its own decision, the Appeals Council's decision becomes the Commissioner's final decision. 20 C.F.R. §§ 404.969, 404.979. On appeal, the task of the district court is to "review the decision of the Appeals Council under the substantial evidence standard, not the decision of the ALJ." Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).

## IV.

## DISCUSSION

A. **ISSUE ONE: Whether Plaintiff's Laundromat Work Was SGA.**

### 1. The Definitions of Past Relevant Work and SGA.

At step four, claimants have the burden to show that they are no longer able to perform their past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520(e). The Commissioner may deny benefits at step four if the claimant has the RFC to perform either a particular past relevant job as "actually performed," or the same kind of work as "generally" performed in the national economy. Pinto, 249 F.3d at 844-45 (citing Social Security Ruling ("SSR") 82-61); SSR 82-62 at *3. Social Security regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn it." 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a).

"Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." Lewis v. Apfel, 236 F.3d 503, 515 (9th

Cir. 2001). The primary factor used to determine whether a claimant was engaged in SGA at a particular job is the amount of earnings a claimant derived from the job. Le v. Astrue, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008). "There is a rebuttable presumption that the employee either was or was not engaged in SGA if his or her average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines." Id.; Lewis, 236 F.3d at 515 ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."). A claimant may rebut the presumption that he was engaged in SGA at a prior job by presenting evidence that he was employed under "special conditions" which "[took] into account [his] impairment"—for example, the claimant "required and received special assistance from other employees," the claimant was "allowed to work irregular hours or take frequent rest periods," or the claimant was permitted to work despite his impairments due to a family relationship. 20 C.F.R. § 404.1573(c).

Thus, the concept of substantial gainful activity involves the amount of compensation *and* the substantiality and gainfulness of the activity itself. Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990). "The mere existence of earnings over the statutory minimum is not dispositive." Id. Consistent with this, the Social Security Act describes sheltered work as work "done under special conditions," including simple tasks under close and continuous supervision, or where the employer pays more for the work than the value of the work that is performed, in effect subsidizing the work. 20 C.F.R. §§ 404.1573, 404.1574(a)(2). "The claimant may rebut a presumption based on earnings with evidence of his inability to … perform the job well, without special assistance, or for only brief periods of time." Keyes, 894 F.2d at 1056. Among the factors to be considered are "how well the person is able to perform the work" and "special conditions under which the work is performed." Id. The regulations provide in pertinent part:

We consider how well you do your work when we determine whether

8

>           or not you are doing substantial gainful activity. If you do your work
>           satisfactorily, this may show that you are working at the substantial
>           gainful activity level. If you are unable, because of your
>           impairments, to do ordinary or simple tasks satisfactorily without
>           more supervision or assistance than is usually given other people
>           doing similar work, this may show that you are not working at the
>           substantial gainful activity level. If you are doing work that involves
>           minimal duties that make little or no demands on you and that are of
>           little or no use to your employer, or to the operation of a business if
>           you are self-employed, this does not show that you are working at the
>           substantial gainful activity level.

20 C.F.R. § 404.1573(b). The regulations further provide that work performed under special circumstances might not be considered substantial gainful activity. 20 C.F.R. § 404.1573(c). Among factors that may be considered in making this determination are situations in which:

>           (1) You required and received special assistance from other employees
>           in performing your work;
>           (2) You were allowed to work irregular hours or take frequent rest
>           periods;
>           (3) You were provided with special equipment or were assigned work
>           especially suited to your impairment;
>           (4) You were able to work only because of specially arranged
>           circumstances, for example, other persons helped you prepare for or
>           get to and from your work;
>           (5) You were permitted to work at a lower standard of productivity or
>           efficiency than other employees; or
>           (6) You were given the opportunity to work despite your impairment
>           because of family relationship, past association with your employer, or

| | your employer's concern for your welfare. |
20 C.F.R. § 404.1573(c).

### 2. Analysis of Claimed Error.

Per the above-cited authorities, Plaintiff's laundromat work qualifies as past relevant work if (1) it was done within the last 15 years, (2) lasted long enough for the Plaintiff to learn it, and (3) was substantial gainful activity. 20 C.F.R. § 404.1565.

Elements (1) and (2) are undisputed. Regarding element (3), Plaintiff first argues that the ALJ erred by refusing to allow Plaintiff's cousin to testify. (JS at 10 ["It cannot be Plaintiff's fault that the ALJ refused to take testimony from Plaintiff's cousin, who was present and willing to testify."] citing AR 30.) The AR, however, does not support this characterization. Plaintiff's counsel merely stated, "I think I was going to have his cousin testify …." AR 30. Plaintiff's counsel did not directly ask to call the cousin as a witness, and the ALJ never refused that request (at least not on the record). Id. In any event, none of the discussion at AR 30 explains why Plaintiff's counsel did not (1) question Plaintiff at the hearing about the circumstances of his prior work, or (2) submit a declaration from Plaintiff or his cousin describing why the laundromat work was sheltered after the Appeals Council alerted Plaintiff of its intended ruling and solicited new evidence.

Plaintiff next argues that the record is not adequate to permit consideration of the factors that inform whether a past job qualifies as SGA, requiring remand. (JS at 6.) Defendant responds that since Plaintiff still bears the burden of proof at step four of the sequential evaluation process, any lack of evidence that Plaintiff's laundromat work was sheltered justifies denial of benefits, not remand. (JS at 9.) Defendant is correct. As described above, Plaintiff had opportunities to present evidence rebutting the presumption of SGA established by his earnings, but he failed to do so.

For these reasons, Plaintiff has failed to show legal error in the Appeals Council's step four finding.

B. **ISSUE TWO: Evaluation of the Medical Evidence.**

### 1. The Special Technique for Evaluating Mental Impairments.

To determine the severity of mental MDIs at step two in the sequential evaluation process, the ALJ must consider how well the claimant functions in four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). A claimant with only "none" or "mild" limitations in these areas does not have a severe mental impairment. 20 C.F.R. § 404.1520a(d)(1).

If a claimant has a severe mental impairment, then the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). This is done "by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation … in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision)." Id.

The regulations require that ALJs and the Appeals Council document their application of this special technique in certain ways. 20 C.F.R. § 404.1520a(e). Specifically, "the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(4).

**2. Medical Evidence Regarding Plaintiff's Mental Impairments.**

On September 25, 2015, Dr. Frederick Thomas completed a Mental Impairment Questionnaire indicating that he had started to treat Plaintiff earlier that month. AR 258-61. The Questionnaire defined a "marked" limitation as one that prevents an individual from "generally perform[ing] satisfactorily." AR 258. Dr. Thomas opined that Plaintiff had "marked" limitations in understanding and carrying out "very short and simple instructions" and in maintaining attention and concentration. Id. He also opined that Plaintiff had "moderate" or "marked" limitations in all areas of social functioning. AR 259. He did not describe any medical findings supporting these assessments, instead citing family members' statements that Plaintiff has "never been able to sustain gainful employment." Id.

Plaintiff describes Dr. Thomas's Questionnaire as "the only mental opinion in the record." (JS at 17-18.) In fact, in June 2016, Plaintiff underwent a psychological assessment by psychologist Dr. Robert Koranda focused on his potential diagnosis with intellectual disability. AR 268-73. Dr. Koranda reviewed Plaintiff's earlier medical and special education records and interviewed his cousin. AR 268-69. He administered several cognitive tests, including a nonverbal IQ test on which Plaintiff scored 71. AR 270. Plaintiff tested at the fourth and fifth grade levels in basic academic subjects. AR 271. Dr. Koranda diagnosed Plaintiff as suffering from mild intellectual disability with "significant deficits in the conceptual, social, and practical domains." AR 273.

**3. Summary of Claimed Errors.**

As directed by 20 C.F.R. § 404.1520a, the ALJ assessed the degree of functional limitation resulting from Plaintiff's mental impairment with respect to (1) understanding, remembering, or applying information ("moderate"); (2) interacting with others ("none"); (3) concentrating, persisting, or maintaining pace ("moderate"); and (4) adapting or managing oneself ("mild"). AR 17. Consistent with these findings, he determined that Plaintiff's intellectual disability

was a "severe" MDI.  The ALJ, however, did not discuss or cite any evidence (such as medical opinions or Plaintiff's reported activities) supporting his assessments of Plaintiff's functional limitations.

At step three, the ALJ found that Plaintiff's intellectual disability did not meet or medically equal any impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  AR 17.  In making this finding, the ALJ did not recite any listing's criteria and then compare evidence to the criteria.

The Appeals Council adopted the ALJ's findings at steps two and three.  AR 4.  Those included findings that Plaintiff's intellectual disability was a "severe" MDI, but that it did not meet or equal a listed impairment.  AR 17.

At step four, the ALJ limited Plaintiff's mental RFC to simple, repetitive tasks.  AR 17.  The ALJ did not discuss any medical evidence supporting this RFC assessment.  The Appeals Council adopted this finding and its rationale.  AR 5.  Neither the Appeals Council nor the ALJ discussed Dr. Peterson's testimony.

Plaintiff argues that the ALJ's analysis at steps two and three did not adequately discuss the medical evidence of Plaintiff's intellectual functioning, and that "Plaintiff may equal Listing 12.05." (JS at 11.)  Plaintiff further argues that since the Appeals Council adopted the ALJ's findings, the ALJ's error infects the final decision by the Appeals Council.  (Id.)

Plaintiff also argues that neither the ALJ nor the Appeals Council mentioned Dr. Thomas's Questionnaire, let alone gave "specific and legitimate" reasons for rejecting it.  Plaintiff argues that this affected the RFC determination (i.e., Plaintiff is not capable of work requiring consistent performance of simple, repetitive tasks) and caused the ALJ to pose a hypothetical question to the VE that did not contain all of Plaintiff's limitations.  (JS at 14.)

**4. Analysis.**

It is unclear whether Plaintiff argues that the ALJ (and, by adopting the ALJ's findings, the Appeals Council) erred at step two, step three, and/or step four.

13

In a sense, it does not matter. No one—not the ALJ and not the Appeals Council— discussed the opinions of Drs. Peterson, Koranda, or Thomas, gave them relative weights, or explained what evidence supported the finding that Plaintiff had the mental capacity to perform SGA if it were limited to simple, repetitive tasks. This was legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."); see also Smith v. Heckler, 760 F.2d 184, 187 (8th Cir. 1985) ("It is the ALJ's duty to weigh the medical evidence where there is a conflict in medical opinion. The resolution of conflicts in testimony are the province of the Commissioner and not the courts.").

Defendant argues that the Appeals Council independently found that Plaintiff could do simple, repetitive tasks by relying on the testimony of ME Savage. (JS at 15.) This argument lacks support from the record. While the Appeals Council did grant Dr. Savage's opinions "significant weight," it only discussed his opinions concerning Plaintiff's exertional RFC. Regarding Plaintiff's mental RFC, the Appeals Council stated, "we adopt the findings and rational pertaining to his mental impairments and mental limitations as found in the hearing decision," referring to the ALJ's opinion. AR 5. The ALJ, in turn, apparently relied on Dr. Koranda's report (using the same wording of "mild intellectual disability" to state Plaintiff's severe MDIs), the same report reviewed by ME Savage.

Defendant appears to be arguing that the ALJ's and Appeals Council's failure to discuss Drs. Thomas and Koranda was harmless error, because Plaintiff's past employment at the laundromat demonstrates he has the intellectual ability to perform such work. (JS at 15.) The failure to address pertinent evidence is harmless if the error did not affect the outcome of the case. See Stout, 454 F.3d at 1055-56. The Court cannot conclude that the error here was harmless. Dr. Koranda found that Plaintiff had "significant" social deficits (AR 273), while Dr.

Thomas opined that Plaintiff had "moderate" or "marked" limitations in all areas of social functioning (AR 259). The ALJ and Appeals Council may have overlooked these opinions or may have discounted them as inconsistent with other evidence[6] or for other reasons; it is impossible to tell from the record. Had the ALJ credited these opinions, however, and limited Plaintiff's work-related social interaction to some degree (e.g., only "frequent" interactions with the public), such a limitation might have changed the VE's conclusion that Plaintiff could perform his past relevant work.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING for further administrative proceedings consistent with this opinion.

DATED: February 20, 2019

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge

---

[6] Plaintiff's cousin's reported that Plaintiff is "extremely friendly and gets along well with others" (AR 269), and Plaintiff's history demonstrates that he could interact with others well enough to work at the laundromat for many years.